# 23-7309-cv

## United States Court of Appeals

### *for the*

## Second Circuit

WILLIAM T. JACKLING,

*Plaintiff-Appellant,*

— v. —

BRIGHTHOUSE LIFE INSURANCE COMPANY,

*Defendant-Appellee,*

TRAVELERS, METLIFE, GENWORTH, BRIGHTHOUSE FINANCIAL,

*Defendants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFF-APPELLANT

KAREN KING
EMMA MAYNARD
MORVILLO ABRAMOWITZ
    GRAND IASON & ANELLO P.C.
*Attorneys for Plaintiff-Appellant*
565 Fifth Avenue
New York, New York 10017
(212) 856-9600

CP COUNSEL PRESS    (800) 4-APPEAL • (365559)

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES....................................................................ii

PRELIMINARY STATEMENT.............................................................1

STATEMENT OF JURISDICTION .......................................................3

ISSUES PRESENTED............................................................................3

STATEMENT OF THE CASE.................................................................4

      1.   The Insurance Policy ...............................................................4

      2.   Mr. Jackling's Deteriorating Health .......................................6

      3.   The Claims................................................................................7

      4.   Procedural History...................................................................8

SUMMARY OF ARGUMENT...............................................................10

ARGUMENT .........................................................................................11

I.    The District Court Failed to Notify Mr. Jackling, A *Pro Se* Litigant, of the Nature and Consequences of Summary Judgment ...........................11

II.   The District Court Erred in Dismissing Mr. Jackling's Claims Based on Collateral Estoppel ....................................................................14

    A.   Mr. Jackling Was Not a Party or in Privity with a Party in *Estate of Jackling* ................................................................15

    B.   The Conditions for Collateral Estoppel Were Not Satisfied ..............16

III.  The District Court Erred in Finding that Mr. Jackling Was Required to Use Licensed Caregivers for the Services Provided..............19

    A.   The Policy Covers Unlicensed Aides When The State Does Not Require Licensing ................................................20

    B.   The Policy Should Be Construed Against Brighthouse .....................22

CONCLUSION .....................................................................................23

i

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Bonner v. Lynott,*
166 N.Y.S.3d 325 (3d Dep't 2022) ........................................................ 19

*Breed v. Insurance Co. of N. Am.,*
46 N.Y.2d 351 (1978)............................................................................. 22

*Brook Beverage, Inc. v. Pepsi-Cola Bottling Co. Of N.Y., Inc.,*
No. 20-cv-9275, 2021 WL 735346, (S.D.N.Y. Feb. 25, 2021) ............. 22

*Carroll v. Trump*,
690 F. Supp. 3d 396 (2d. Cir. 2023) ............................................... 14, 17

*Chappaqua Cent. School Dist. v. Philadelphia Indem. Ins. Co.,*
148 A.D.3d 980 (2d Dep't 2017) .......................................................... 17

*CITGO Petroleum Corp. v. Starstone Ins. SE,*
No. 21-cv-389, 2023 WL 2525651 (S.D.N.Y. Mar. 15, 2023)............. 22

*City of New York v. Evanston Ins. Co.,*
890 N.Y.S.2d 299 (2d Dep't 2007) ....................................................... 22

*Conason v. Megan Holding, LLC,*
25 N.Y.3d 1 (2015)................................................................................. 15

*Conte v. Justice*,
996 F.2d 1398 (2d Cir. 1993) ......................................................... 15, 16

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.,*
600 F.3d 190 (2d Cir. 2010) .................................................................. 20

*EMA Financial, LLC v. Chancis*,
80 F.4th 395 (2d. Cir. 2023) ................................................................. 14

*Estate of Jackling v. Brighthouse Life Insurance Co.,*
No. 20-cv-6899 (W.D.N.Y. 2020) ..................................................*Passim*

ii

*Ezrasons, Inc. v. Travelers Indem. Co.*,
    89 F.4th 388 (2d Cir. 2023) ................................................................. 22

*Galli v. Metz*,
    973 F.2d 145 (2d Cir. 1992) ................................................................. 21

*Gelb v. Royal Globe Ins. Co.*,
    798 F.2d 38 (2d Cir. 1986) ................................................................... 18

*Green v. Santa Fe Industries, Inc.*,
    70 N.Y.2d 244 (1987) ........................................................................... 16

*Jackling v. Brighthouse Life Insurance Co.*,
    No. 20-cv-6995 (W.D.N.Y. 2020) ................................................. *Passim*

*Johnson v. Annucci*,
    314 F. Supp. 3d 472 (W.D.N.Y. 2018) ................................................. 11

*Jorgensen v. Epic/Sony Recs.*,
    351 F.3d 46 (2d Cir. 2003) ................................................................... 13

*Jova v. Smith*,
    582 F.3d 410 (2d Cir. 2009) ................................................................. 11

*Malloy v. Trombley*,
    50 N.Y.2d 46 (1980) ............................................................................. 18

*McPherson v. Coombe*,
    174 F.3d 276 (2d Cir. 1999) ................................................................. 12

*New York v. Home Indem. Co.*,
    66 N.Y.2d 669 (1985) ........................................................................... 22

*Phoenix Light SF Limited v. Bank of New York Mellon*,
    66 F.4th 365 (2d Cir. 2023) ........................................................... 14, 15

*PNMAC Mortgage Co., LLC v. Friedman*,
    189 A.D.3d 1289 (2d Dep't 2020*)* ...................................................... 17

iii

*Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
  5 N.Y.3d 157 (2005) ............................................................. 20

*Ruotolo v. IRS*,
  28 F.3d 6 (2d Cir. 1994) ...................................................... 12

*Samhammer v. Home Mut. Ins. Co. of Binghamton*,
  507 N.Y.S.2d 499 (3d Dep't 1986) ...................................... 16

*State v. Zurich Am. Ins. Co.*,
  965 N.Y.S.2d 206 (3d Dep't 2013) ...................................... 15

*Stinnett v. Delta Air Lines, Inc.*,
  803 Fed. App'x 505 (2d Cir. 2020) ..................................... 14

*Team Kennedy v. Berger*,
  2024 WL 4144057 (S.D.N.Y. 2024) ..................................... 18

*Tydings v. Greenfield, Stein & Senior, LLP*,
  11 N.Y.3d 195 (2008) .......................................................... 18

*Value Wholesale, Inc. v. KB Insurance Co. Ltd.*,
  450 F. Supp. 3d 292 (E.D.N.Y. 2020) ................................. 17

*Vital v. Interfaith Medical Center*,
  168 F.3d 615 (2d Cir. 1999) ..........................................*Passim*

*Williams v. NYCHA*,
  61 F.4th 55 (2d. Cir. 2023) .................................................... 4

**Statutes**

28 U.S.C. § 1291 ........................................................................... 3

28 U.S.C. § 1332 ........................................................................... 3

N.Y. Pub. Health § 3602 ............................................................ 19

N.Y. Pub. Health § 3605 ............................................................ 19

N.Y. Gen. Bus. L. § 349 ............................................................... 8

**Other Authorities**

New York State Partnership for Long-Term Care Home Page,
  https://nyspltc.health.ny.gov/ ................................................. 4

*New York State Partnership for Long-Term Care*, New York State Department of
  Health,
  https://nyspltc.health.ny.gov/docs/2022_brochure.pdf ........................................... 5

*New York Partnership for Long-Term Care Program*, New York State Department
  of Financial Services,
  https://www.dfs.ny.gov/consumers/health_insurance/long_term_care
  _insurance/nys_partnership ................................................... 5

*How Purchasing Long Term Care Insurance Can Help Medicaid Beneficiaries
  Protect their Homes & Assets*, American Council On Aging,
  https://www.medicaidplanningassistance.org/partnerships-for-long-
  term-care/ ...................................................................... 5

## PRELIMINARY STATEMENT

Plaintiff-Appellant William Jackling is an 88-year-old, widowed veteran fighting for benefits under a long-term health insurance policy that was promised to protect his personal assets. The insurer, Defendant-Appellee Brighthouse Insurance Company ("Brighthouse"), declined Mr. Jackling's reimbursement claims for certain home assistance services provided between 2016 and 2019 because (among other things) his chosen aides were not licensed or certified. Brighthouse also denied similar claims made by the estate of Mr. Jackling's wife under her (separate) long-term health care policy, relating to the home assistance she received until her death in 2014 from ALS (amyotrophic lateral sclerosis, also known as Lou Gehrig's disease).

In 2020, both Mrs. Jackling's estate and Mr. Jackling brought lawsuits against Brighthouse under their respective policies. On July 10, 2022, the district court (Pedersen, M.J.)[1] dismissed the estate's claims based on statutes of limitations, and in the alternative, ruled that Mrs. Jackling's policy did not cover aides that were not licensed or certified. Soon after, Brighthouse moved for summary judgment on Mr. Jackling's claims, arguing that he was collaterally estopped from asserting them because, as the executor of his wife's estate, he had already litigated his claims and

---

[1] The parties consented to jurisdiction by a magistrate judge. Consent to Jurisdiction by U.S. Magistrate Judge, No. 20-cv-6995 (W.D.N.Y. June 16, 2021), ECF No. 15.

1

lost. On September 6, 2023, the district court granted the motion for summary judgment.

The district court's decision was erroneous for multiple reasons. As a threshold matter, Mr. Jackling, who was *pro se* at the time, was not apprised of the nature and requirements of the summary judgment motion. This alone necessitates vacatur and remand under this Circuit's precedent.

Moreover, collateral estoppel is not applicable here. Mr. Jackling was neither a party to, nor in privity with, the estate's lawsuit, which concerned Mrs. Jackling's own insurance policy and services she received from different caregivers in a different time period. There are unique factual and legal issues between the two lawsuits and Mr. Jackling has not had a full and fair opportunity to litigate his case.

The district court was also wrong to interpret Mr. Jackling's policy as requiring home care aides to be licensed or certified. The relevant policy provision is clear that licensing is required only "if licensing is required by the state." New York does not require licensing or certification for the home maker and housekeeping services at issue. And regardless, any ambiguity in the policy must be construed against the insurer, Brighthouse.

In light of the many errors in the district court's summary judgment order, Mr. Jackling respectfully requests that the decision be vacated and the case remanded for trial, with guidance on the key legal issues presented.

2

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1332 and entered final judgment on September 6, 2023. Mr. Jackling filed a timely notice of appeal on October 6, 2023. This Court has jurisdiction under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether the district court was required to provide notice to Plaintiff-Appellant, a *pro se* litigant, of the nature and consequences of a motion for summary judgment, consistent with *Vital v. Interfaith Medical Center*, 168 F.3d 615 (2d Cir. 1999).

2. Whether the district court erred in finding that Plaintiff-Appellant's claims are barred under the doctrine of collateral estoppel where he represented his wife's estate in similar litigation but pertaining to her care under a separate policy.

3. Whether the district court erred in finding that Mr. Jackling's aides had to be licensed in order to fall under the insurance policy, even though New York State has no license requirement for providers of the services that Mr. Jackling received.

3

## STATEMENT OF THE CASE[2]

### 1. The Insurance Policy

Twenty-five years ago, in early 2000, Mr. Jackling and his wife each purchased a long-term care insurance policy from Defendant-Appellee Brighthouse and paid an annual premium of $1,556.80.[3]  A524–A555.  The policies were part of the New York State Partnership for Long Term Care Program, which "combin[es] private long-term care insurance and Medicaid Extended Coverage (MEC)" and is designed to "protect [the insured's] assets" by insuring health care costs up to a set limit in the event long term care becomes necessary.[4]  This allows the insured to avoid or delay applying for Medicaid, which gives rise to a claim by the government

---

[2] The Court must view the record in the light most favorable to Mr. Jackling, and draw all reasonable inferences in his favor.  *See Williams v. NYCHA*, 61 F.4th 55, 68 (2d. Cir. 2023).

[3] The original policy issuer was Travelers Insurance Company.  In 2005, MetLife, Inc. acquired Travelers Insurance Company and in 2017, renamed it Brighthouse Life Insurance Company.

[4] New York State Partnership for Long-Term Care Home Page, https://nyspltc.health.ny.gov (last visited Feb. 14, 2025).

on the insured's assets after death.[5]  In this way, the program allows participants to protect assets like a family home for inheritance.[6]

Under Mr. Jackling's policy, he is entitled to "Qualified Long Term Care Services" if he is "Chronically Ill." [*Id.* at 2.]  A chronically ill individual is defined as:

> [A]ny individual who has been certified by a Licensed Health Care Practitioner as: 1) Being unable to perform (without Substantial Assistance from another individual) at least 2 ADLs [(activities of daily living)] for a period of at least 90 days due to a loss of functional capacity; or 2) Requiring Substantial Supervision to protect such individual from threats to health and safety due to Severe Cognitive Impairment.

A531.

Activities of daily living include dressing, eating, transferring, toileting, bathing, and continence.  *See id.*

---

[5] *New York State Partnership for Long-Term Care*, New York State Department of Health, https://nyspltc.health.ny.gov/docs/2022_brochure.pdf (last visited Feb. 14, 2025); *New York Partnership for Long-Term Care Program*, New York State Department of Financial Services, https://www.dfs.ny.gov/consumers/health_insurance/long_term_care_insurance/ny s_partnership (last visited Feb. 14, 2025).

[6] *How Purchasing Long Term Care Insurance Can Help Medicaid Beneficiaries Protect their Homes & Assets*, American Council On Aging, https://www.medicaidplanningassistance.org/partnerships-for-long-term-care/ (last visited Feb. 14, 2025).

The covered care explicitly encompasses "Home Health Care," which includes services provided by "a licensed home health care agency, if licensing is required by the state," including:

> a) Home health aide services (including services of a home health aide where Human Assistance is required to aid You in necessary travel, such as travel to and from a physician's office); or
>
> b) Home hospice services; or
>
> c) Homemaker services, including meal preparation, personal laundry services, light housekeeping and grocery shopping, provided that these services are prescribed in Your written Plan of Care and are performed by any of the individuals described above. Such services must be performed during the same visit in which the individual is primarily providing custodial/personal care.

A539. "Services of a licensed or certified home health aide who does not report through a licensed or certified home health agency" can also qualify for reimbursement. *Id.*

### 2. Mr. Jackling's Deteriorating Health

In his late 70s and following the death of his wife, Mr. Jackling's health declined significantly. He was diagnosed with chronic kidney disease and diabetes. *See* A605, A1097. Starting in 2016, Mr. Jackling needed assistance with basic life tasks, like cooking, cleaning, personal hygiene, shopping, laundry, and "arm's length" assistance and supervision. A596–A623. Brighthouse's own assessment of Mr. Jackling in 2016 found that he was "unsteady" and "forgetful," and relied on aides for help with shopping, meal preparation, homemaking, laundry,

6

transportation, and taking his medications. A602, A606–A611. A March 27, 2017 assessment observed that Mr. Jackling required oversight to complete basic tasks like eating, dressing, and bathing. A831–A835. A July 5, 2018 assessment observed that Mr. Jackling had deteriorated further and continued to require assistance with all of these basic needs. A1104–1110.

### 3. The Claims

Between 2016 and 2019, Mr. Jackling submitted four consecutive claims for reimbursement to Brighthouse for the services his aides provided in support of his daily living. SPA3–SPA5. The first claim, A498470, covered a period from September 16, 2016 through January 5, 2017. A801. The second claim, A519660, covered a period from January 6, 2017 through April 22, 2017. A1284. The third claim, A583490, covered a period from March 3, 2018 through June 13, 2018. A1162. And the fourth claim, A635590, covers a period beginning September 7, 2019. A1228. With respect to the first three claims, Mr. Jackling received help from two aides that were not affiliated with a home health care agency. *See, e.g.*, A1168, A1171. For the fourth claim, A635590, Mr. Jackling received the same services but switched from his individual providers to Comfort Keepers, a home health care agency. A1228.

Brighthouse denied the first two claims (A498470 and A519660) on the ground that Mr. Jackling was not a "Chronically Ill Individual," despite his diagnoses

for chronic kidney disease and diabetes, and because the two aides who performed the services were not certified or licensed.  A788–90; A853–54.  On the third claim (A583490), Brighthouse determined that Mr. Jackling *did* qualify for the relevant care but refused to provide reimbursement because, again, the two aides who performed the services were not certified or licensed.  A1160.  On the fourth claim (A635590), Brighthouse found that Mr. Jackling was both eligible for care and that his newly proposed care provider, Comfort Keepers, qualified for reimbursement.  A1228.

### 4.    Procedural History

On August 3, 2020, Mr. Jackling filed a complaint in New York State Supreme Court against Brighthouse, asserting four causes of action relating to Brighthouse's rejection of his claims covering the period from 2016 to 2019:  (1) breach of the Policy, (2) bad faith in denying claims generally under long-term care policies, (3) fraud based on misrepresentations over coverage that inducted him to purchase the Policy, and (4) violation of  New York General Business Law § 349.  A107–17.  Brighthouse removed the action to the Western District of New York.  Notice of Removal, No. 20-cv-6995 (W.D.N.Y. Nov. 20, 2020), ECF No. 1.

At the time Mr. Jackling filed his claim, he was also serving as executor for his wife's estate, which had filed a separate claim against Brighthouse concerning

unreimbursed services under Mrs. Jackling's policy. The district court dismissed that case as time-barred on July 10, 2022. A97.

On September 1, 2022, Brighthouse moved for summary judgment based on multiple grounds, including collateral estoppel, statute of limitations, and factual assertions that Mr. Jackling was not entitled to reimbursement. Motion for Summary Judgment, No. 20-cv-6995 (W.D.N.Y. Sep. 1, 2022), ECF No. 54.

Soon after the summary judgment motion, Mr. Jackling became *pro se*. *See* Text Order, No. 20-cv-6995 (W.D.N.Y. Nov. 17, 2022), ECF No. 57. Although he was granted extension of time to file his papers, Mr. Jackling was not informed by the district court (or anyone else) of the nature and significance of a summary judgment motion, or the requirements in responding to such a motion. *See id.* (W.D.N.Y. Nov. 28, 2022), ECF No. 59. Accordingly, his submissions to the court did not satisfy the requirements of *Vital v. Interfaith Medical Center*, 168 F.3d 615 (2d Cir. 1999).

On September 6, 2023, the district court granted Brighthouse's motion for summary judgment and held, *inter alia*, that Mr. Jackling was in privity with the plaintiff in *Estate of Jackling* as executor of his wife's estate, and thus collateral estoppel barred him from raising separate claims against Brighthouse under his own identical policy. SPA7–SPA12. In the alternative, the district court wrote that Brighthouse would still be entitled to summary judgment, because the "[p]olicy

language requires certified aides, and . . . New York does offer certification for aides," and because Mr. Jackling failed to prove that he was a "chronically ill individual." SPA15, SPA22. Accordingly, the district court granted summary judgment to Brighthouse. SPA23.

On October 6, 2023, Mr. Jackling timely filed a notice of appeal. A1567.

## SUMMARY OF ARGUMENT

At the outset, the district court's summary judgment decision should be vacated and remanded because Mr. Jackling, a *pro se* plaintiff, was not provided requisite notice of the nature and consequences of summary judgment. Under this Court's precedent, failure to provide such notice is reversible error.

The district court's dismissal based on collateral estoppel is also erroneous as a matter of law because it conflates claims belonging to Mrs. Jackling with claims belonging to Mr. Jackling, even though they are separate plaintiffs with separate policies, raising distinct claims over different time periods. Mr. Jackling does not forgo his own claims simply because he is the executor of his wife's estate, which raised different claims under the same legal theory. By definition, Mr. Jackling has not had a full and fair opportunity to litigate *his* claims, which relate to *his* illness, *his* home care, and *his* policy.

In any event, the district court erred in finding that Mr. Jackling's Policy is only required to reimburse home care services provided by licensed or certified

10

aides. The natural reading of the Policy requires licensed service providers only for services that must be licensed under state law. But New York does not require (or provide) licenses for aides performing unskilled homemaking and housekeeping services—the services received by Mr. Jackling. At a minimum, Mr. Jackling's interpretation of the Policy is reasonable, ambiguities should be construed against the insurance company, and any dispute over extrinsic evidence (like representations made by the insurance company at time of purchase) should be viewed in the light most favorable to Mr. Jackling.

For all these reasons, this Court should vacate and remand the district court's decision granting summary judgment to Brighthouse.

## **ARGUMENT**

### I.   The District Court Failed to Notify Mr. Jackling, A *Pro Se* Litigant, of the Nature and Consequences of Summary Judgment

It has long been the rule in this Circuit that *pro se* litigants must be informed of the "nature and consequences" of a motion for summary judgment, and the need to preserve factual issues for trial by responding to each of the opposing party's factual assertions. *See, e.g.*, *Vital v. Interfaith Medical Center*, 168 F.3d 615, 620–21 (2d Cir. 1999); *Jova v. Smith*, 582 F.3d 410 (2d Cir. 2009); *Johnson v. Annucci*, 314 F. Supp. 3d 472, 474 (W.D.N.Y. 2018). Mr. Jackling was *pro se* at the time of Brighthouse's summary judgment motion. However, he was not given any information about the nature of summary judgment or the consequences of failing to

11

respond to each fact and issue raised by Brighthouse.[7]  That omission alone is grounds for vacatur and remand.  *Vital*, 168 F.3d at 621 (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)) ("The failure of a district court to apprise *pro se* litigants of the consequences of failing to respond to a motion for summary judgment is ordinarily grounds for reversal.").

Notice by the district court to the *pro se* litigant is not required if "the opposing party has already provided the litigant with the requisite notice" or "where the record otherwise makes clear that the litigant understood the nature and consequences of summary judgment."  *Id.*  Here, however, Brighthouse did not provide any such notice and the record reflects Mr. Jackling's lack of understanding about the nature and consequences of summary judgment. *See McPherson v. Coombe*, 174 F.3d 276, 281–82 (2d Cir. 1999) (*pro se* plaintiff lacked sufficient understanding of summary judgment because the record did not show that he understood the requirement to "submit (rather than just identify) the affidavits and other documentary evidence that support his claim, so as to raise a genuine issue of fact as to every material element

---

[7]  The only conference that falls between the date Brighthouse moved for summary judgment, September 1, 2022, and the date that Mr. Jackling filed his response on June 12, 2023, occurred on November 28, 2022 and no recording exists of that conference.  Only one transcript—from January 2022—exists of the telephonic hearings that took place with the district court and Mr. Jackling over the course of the litigation, and there is no discussion of potential summary judgment motions. Minute Entry, No. 20-cv-6995 (W.D.N.Y. Jan. 28, 2022), ECF No. 35.  Instead, the conference focused on scheduling and concluded with a scheduling order.  *Id.*

of the claim[.]").  Mr. Jackling's submission in response to the motion for summary judgment did not engage with all of the factual assertions by Brighthouse, and he did not marshal the relevant evidence in support of his claims.  *See Vital*, 168 F.3d at 621 ("[T]he mere fact that [a] *pro se* litigant has made *some response* to the motion for summary judgment is not dispositive" of the litigant's "understanding of summary judgment") (emphasis added); *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 50 (2d Cir. 2003) (finding that *pro se* litigant's response demonstrated an understanding of summary judgment motion where he "carefully marshaled the evidence in support of his theories").  Even Mr. Jackling's "purported counterstatement of facts," which was filed 17 days after Brighthouse's reply brief, was not supported by sworn testimony and did not comply with procedural requirements.  SPA3 ("Mr. Jackling's responsive statement of facts references a 'J38' document, which is not discussed at all in Brighthouse's statement [and] Mr. Jackling's statement does not explain what the document is or what relevance it has to this lawsuit.")

Because neither the district court nor Brighthouse notified Mr. Jackling of the nature and consequences of summary judgment, and because Mr. Jackling plainly did not understand the significance of the motion, judgment should be vacated and the case remanded.

## II.     The District Court Erred in Dismissing Mr. Jackling's Claims Based on Collateral Estoppel

The primary legal basis for the district court's decision on summary judgment is also erroneous, and this Court should address the district court's analysis of collateral estoppel to ensure that the issue is analyzed properly on remand.

The doctrine of collateral estoppel provides that parties or their privies cannot relitigate an issue already decided in a prior proceeding. *See Phoenix Light SF Limited v. Bank of New York Mellon*, 66 F.4th 365, 371 (2d Cir. 2023).  Under New York law, "[c]ollateral estoppel comes into play when four conditions are fulfilled: '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.'"[8] *Carroll v. Trump*, 690 F. Supp.

---

[8] In this case, New York State collateral estoppel standards apply, rather than federal standards, because both this matter and *Estate of Jackling* were in federal court by diversity jurisdiction.  *See EMA Financial, LLC v. Chancis*, 80 F.4th 395, 404 (2d. Cir. 2023) ("When a district court sits in diversity, the governing preclusion law is that of the state in which the court is located—in this case, New York."); *Phoenix Light*, 66 F.4th at 371 ("The preclusive effect of a judgment rendered by a federal court sitting in diversity . . . is determined by the law of the state in which the rendering court sat."); *Stinnett v. Delta Air Lines, Inc.*, 803 Fed. App'x 505, 508 n.3 (2d Cir. 2020) ("Under federal common law, the question of whose law governs the preclusive effect of a prior federal judgment turns on the basis for jurisdiction in that prior case, without regard to the basis for jurisdiction in a later case applying it.").

3d 396, 403 (2d. Cir. 2023) (quoting *Conason v. Megan Holding, LLC*, 25 N.Y.3d 1, 17 (2015)).

Brighthouse failed to establish any of those conditions.

### A. Mr. Jackling Was not a Party or in Privity with a Party in *Estate of Jackling*

Collateral estoppel only applies to parties, or those in privity with parties, to the former action. *Phoenix Light*, F.4th at 371. The party raising collateral estoppel bears the burden of establishing privity—a burden that Brighthouse failed to carry here. *See State v. Zurich Am. Ins. Co.*, 965 N.Y.S.2d 206 (3d Dep't 2013).

Although the discussion on this point is cursory, the district court appears to have held that privity was established because Mr. Jackling "was in control of the litigation in [*Estate of Jackling*]" and "asserted the same causes of action." SPA9. That is inconsistent with the precedent of this Court, which has held that serving as an executor, or the like, does not establish privity and does not preclude the executor from bringing a separate claim in an individual capacity concerning separate property. *See Conte v. Justice*, 996 F.2d 1398, 1403 (2d Cir. 1993) (no privity between mother as individual and mother as legal representative of son where "although the theories of recovery in the prior and present actions are the same, the claims are discrete as to each plaintiff because they did not involve the identical property"). Here, Mr. Jackling's "property interest at stake relates directly to" his own policy and rejected reimbursement claims, not his wife's. *Id.* And

15

"participation as a guardian does not, without more, preclude a person[']s right to bring a subsequent personal cause of action." *Id.*

The fact that the lawsuits for the estate and for Mr. Jackling in an individual capacity rely on the same theory of recovery does not alter the analysis because the respective claims pertain to two wholly distinct contracts. *See Green v. Santa Fe Industries, Inc.*, 70 N.Y.2d 244, 253–54 (1987) (no privity even though parties shared the same "theories of recovery" because the parties owned "separate blocks of stock"); *see also Samhammer v. Home Mut. Ins. Co. of Binghamton,* 507 N.Y.S.2d 499, 503 (3d Dep't 1986) (holding that "in the absence of specific language to the contrary, an insurance policy issued to a husband and wife is construed as covering the interests of each spouse separately").

Because Mr. Jackling was not in privity with his wife's estate, collateral estoppel has no applicability and is not a proper basis on which to grant summary judgment to Brighthouse.

### B. The Conditions for Collateral Estoppel Were Not Satisfied

Even if Mr. Jackling were in privity with his wife's estate, none of the conditions for the collateral estoppel defense were satisfied:

*First*, the issues in the two proceedings were not identical. Although Mrs. Jackling and Mr. Jackling both alleged breaches of their policies for failure to reimburse them for unlicensed aides, the factual foundations of their suits are

16

materially different. In addition to having separate policies, Mr. Jackling and his wife suffered from different illnesses, had different needs, used different providers, and sought coverage for different periods of time. *See PNMAC Mortgage Co., LLC v. Friedman*, 189 A.D.3d 1289, 1292 (2d Dep't 2020) (no collateral estoppel where "[i]n the prior action, the issue was whether the plaintiff was the holder of [a] note at the time that action was commenced, while in the present action, the issue is whether the plaintiff was the holder of the note at the time this action was commenced").

Moreover, Mr. Jackling cannot be collaterally estopped from arguing pure questions of law, such as the meaning of a contract. *See Value Wholesale, Inc. v. KB Insurance Co. Ltd.*, 450 F.Supp.3d 292, 302 (E.D.N.Y. 2020) ("Under New York law, collateral estoppel, or issue preclusion, does not apply to pure questions of law."); *Chappaqua Cent. Sch. Dist. v. Philadelphia Indem. Ins. Co.*, 148 A.D.3d 980, 982 (2d Dep't 2017) ("The interpretation of policy language is a question of law[.]") Accordingly, the court's interpretation of the policy in *Estate of Jackling* does not preclude Mr. Jackling from arguing for a different interpretation.

*Second*, the core issue in Mr. Jackling's case—reimbursement for unlicensed home aides—was not actually decided or "necessary to support a valid and final judgment on the merits" in *Estate of Jackling*. *Carroll*, 690 F. Supp. 3d at 403. The "decision" from *Estate of Jackling* on which the district court relied was merely an

17

alternative basis for judgment that was not addressed on appeal. It is axiomatic that "'a finding which is but an alternative ground for the prior court's decision' will not ordinarily be given preclusive effect." *See Team Kennedy v. Berger*, No. 24-cv-3897, 2024 WL 4144057, at \*9 (S.D.N.Y. Sep. 18, 2024) (quoting *Malloy v. Trombley*, 50 N.Y.2d 46, 49 (1980)). Moreover, if an "appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the un-reviewed ground." *See Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986); *see also Tydings v. Greenfield, Stein & Senior, LLP*, 11 N.Y.3d 195, 200 (2008) (same under New York law). When this Court affirmed the district court's decision in *Estate of Jackling*, it specifically observed that the decision "begin[s] and end[s]" with the finding that the Estate of Martha Jackling forfeited any arguments on appeal by filing an inadequate opening brief. A1581. Thus, the licensure issue was not resolved in that case. Because "collateral estoppel does not prevent relitigation of a ruling that was an alternative basis for a trial-level decision, where an appellate court affirmed the decision without addressing that ruling," Brighthouse did not satisfy its burden to establish that the licensure issue was actually decided, or necessary to the decision, in *Estate of Jackling. Tydings*, 11 N.Y.3d at 197.

*Third*, given that there are unique facts and issues at play, Brighthouse cannot, as a matter of law, show that Mr. Jackling had a "full and fair opportunity to litigate the issue" because "it simply cannot be said that 'the facts . . . were adequately tested,

18

and . . . the issue was fully aired.'" *Bonner v. Lynott*, 166 N.Y.S.3d 325, 332 (3d Dep't 2022).

**III.  The District Court Erred in Finding that Mr. Jackling Was Required to Use Licensed Caregivers for the Services Provided**

Finally, the district court also erred in finding that the Policy does not cover unlicensed or uncertified aides who provide the home care services at issue.  Central to this issue is whether New York requires licensing for aides who assist with laundry, shopping, cleaning, and other "homemaker services" and "housekeeper services" that do not require a doctor order or supervision.  There are no statutory requirements for agencies or individuals providing such services to be licensed.  *See* N.Y. Pub. Health § 3602 ("'Homemaker services' means assistance and instruction in managing and maintaining a household, dressing, feeding, and incidental household tasks for persons at home . . . . Such services shall be provided persons who meet the standards established by the department of social services[;] 'Housekeeper services' or 'chore services' means the provision of light work or household tasks which do not require the services of a trained homemaker.  Such services may be provided for persons . . . by persons who meet the standards established by the department of social services.'"); N.Y. Pub. Health § 3605 (omitting homemaker and housekeeper services from list of services that require licensing).

**A. The Policy Covers Unlicensed Aides When The State Does Not Require Licensing**

When an insurance policy is clear and unambiguous, courts interpret the policy according to its plain and ordinary meaning. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010). The language of the policy must be construed "in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Raymond Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 5 N.Y.3d 157, 162 (2005).

Mr. Jackling's Policy defines Home Health Care Services to include:

> 7. Services of a licensed home health care agency, ***if licensing is required by the state***, to provide:

> a) Home health aide services (including services of a home health aide where Human Assistance is required to aid You in necessary travel, such as travel to and from a physician's office); or

> b) Home hospice services; or

> c) Homemaker services, including meal preparation, personal laundry services, light housekeeping and grocery shopping, provided that these services are prescribed in Your written Plan of Care and are performed by any of the individuals described above. Such services must be performed during the same visit in which the individual is primarily providing custodial/personal care.

> .      .      .

> ***Services of a licensed or certified home health aide who does not report through a licensed or certified home health agency will be covered*** as long as the following conditions are met: 1) You must utilize the Care Coordination Benefit as described in Your policy; and 2) The

> Licensed Health Care Practitioner develops a written Plan of Care certifying the need for care, and arranges for and approves the necessary services of a certified home health aide.

A539 (emphasis added).

Based on a plain reading of the Policy, Mr. Jackling was not required to use licensed aides for homemaker or housekeeping services because those services do not require licensing in New York. The opening sentence of Section 7 states that licensing is required for home health care services *only* if the state requires it. And the structure of the Section makes clear that the qualification "if licensing is required by the state"—which appears before the subsections listing types of services—is intended to apply throughout the Section. Therefore, the provision stating "[s]ervices of a licensed or certified home health aide who does not report through a licensed or certified home health agency will be covered" is read to mean unlicensed health aides are covered if licensing is not required by the state. *See Galli v. Metz*, 973 F.2d 145 (2d Cir. 1992) (accepting interpretation of contract that contradicted plain meaning of provision because when the contract was read as a whole, it was apparent that the provision had a different meaning). The omission of "license" when describing home health aide later in the same paragraph further confirms that licensing is not intended to be an additional condition to coverage.

Interpreting this language to say that certain services are not covered at all if the state does not require licensing leads to an absurd result. It would penalize

insureds in states that are more flexible in allowing a broader range of (cheaper) providers for certain types of services. *See Brook Beverage, Inc. v. Pepsi-Cola Bottling Co. of N.Y., Inc.*, No. 20-cv-9275, 2021 WL 735346, at *4 (S.D.N.Y. Feb. 25, 2021) (rejecting interpretation of contract that would have given language "little to no practical function"). Other parts of Section 7 confirm that qualifications or conditions are intended to apply throughout the Section. For example, "covered services" are described in 7(a) through (c). Although "services" are referenced later in the Section, the description of the services is not repeated. Nevertheless, the term "services," when used later in the Section, is understood to include the services described in 7(a) through (c).

## B. The Policy Should Be Construed Against Brighthouse

At a minimum, Mr. Jackling's interpretation of the Policy is reasonable. If the Policy was deemed to be susceptible to multiple interpretations, and therefore ambiguous, the district court should have construed the Policy against Brighthouse. *See New York v. Home Indem. Co.*, 66 N.Y.2d 669, 671 (1985). "When dealing with insurance policies, it is a 'fundamental' principle of New York law that ambiguities should be interpreted against the insurer and in favor of the insured." *Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 396 (2d Cir. 2023) (collecting cases); *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 353 (1978); *see also City of New York v. Evanston Ins. Co.*, 830 N.Y.S.2d 299 (2d Dep't 2007); *CITGO Petroleum Corp. v.*

*Starstone Ins. SE*, No. 21-cv-389, 2023 WL 2525651, at *7 (S.D.N.Y. Mar. 15, 2023).

## **CONCLUSION**

For the reasons discussed above, this Court should vacate the judgment and remand the case for further proceedings.

Dated:  February 14, 2025

<div style="margin-left: 40%;">

Respectfully submitted,

 */s/ Karen R. King*
Karen R. King
  *Counsel of Record*
Emma Maynard

</div>

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) and the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 5,271 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated:      February 14, 2025
            New York, New York

                  By:

                        */s/ Karen R. King*
                        Karen R. King

24

SPA-1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

WILLIAM T. JACKLING,

Plaintiff,

v.

BRIGHTHOUSE LIFE INSURANCE
COMPANY, ET AL.,

Defendants.

---

DECISION AND ORDER

20-CV-6995-MJP

**Pedersen, M.J.** William Jackling ("Mr. Jackling" or "Plaintiff") filed two lawsuits before this Court against Brighthouse Life Insurance Company ("Brighthouse"): *Jackling, as Executor of the Estate of Martha Jackling v. Brighthouse*, under Civil Action No. 20-CV-6899-MJP[1] (the "*Estate of Jackling*" case[2]), and *Jackling v. Brighthouse*, under Civil Action No. 20-CV-6995-MJP.[3] In both suits involving policies with identical language, Mr. Jackling asserted claims that Brighthouse was obligated to reimburse him for private, non-certified caregivers. Mr. Jackling then proceeded to assert claims of bad faith, punitive damages, consequential damages, fraud and violations of New York General Business Law

---

[1] The *Estate of Jackling* case was initially filed on July 10, 2020, in New York State Supreme Court under index number E202004474, and removed by Brighthouse to this court on October 27, 2020. (Notice of Removal, ECF No. 1 *in Estate of Jackling*, No. 20-CV-6899-MJP.)

[2] Although the case is reported simply as *Jackling v. Brighthouse Life Ins. Co.*, 2022 U.S. Dist. LEXIS 121290 (W.D.N.Y. July 10, 2022), for clarity, the Court will refer to the case as *Estate of Jackling*.

[3] The case was initially filed in New York State Supreme Court under case number E202005606, on August 3, 2020, and removed by Brighthouse to this court on November 20, 2020. (Notice of Removal, ECF No. 1.)

1

SPA-2

Section 349 and an implied duty of good faith identical to the ones he raised as executor in the *Estate of Jackling* case. This Court, in *Estate of Jackling*, dismissed the prior lawsuit in its entirety by granting Brighthouse summary judgment.

In the current action, which is before the undersigned on consent of both parties (Notice, Consent, and Order of Reference—Exercise of Jurisdiction by a United States Magistrate Judge, Jun. 16, 2021, ECF No. 15), Mr. Jackling asserts identical issues, against identical parties. Brighthouse's defenses are the same as those raised in the *Estate of Jackling* case. Thus, for the reasons stated below, the Court grants Brighthouse's application for summary judgment.

## FACTUAL BACKGROUND

The Court's local rule requires a party seeking summary judgment to file "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." W.D.N.Y. Loc. R. Civ. P. 56(a)(1). The Rule also states that the party opposing summary judgment "shall include a response to each numbered paragraph in the moving party's statement, in correspondingly numbered paragraphs...." *Id*. 56(a)(2). Brighthouse has filed such a statement, but Mr. Jackling's response is not in compliance with the Rule. Nevertheless, the Court will endeavor to ascertain which facts asserted by Brighthouse may be in contention by Mr. Jackling.

Travelers Insurance Company ("Travelers") issued a long-term care policy ("Policy") to Mr. Jackling in January 2000. MetLife, Inc. eventually acquired Travelers, the name of which was eventually changed to Brighthouse Life Insurance Company in 2017. (Def.'s Statement of Facts ¶ 1 & n.1, Sept. 1, 2022, ECF No. 54-

SPA-3

61.) The Policy contained several definitions and defined the benefits, which included "[s]ervices of a licensed home health agency, if licensing is required by the state...." (*Id.* ¶ 2.)

Mr. Jackling opened four claims under the Policy. (*Id.* ¶ 3.) Brighthouse denied the first claim:

> 11. Brighthouse denied benefits to Plaintiff based on the failure of Plaintiff to be eligible for benefits by letter dated January 5, 2017, and *also advised that the Policy did not provide benefits for the services of privately hired, uncertified caregivers.* (Grasso Declaration, ¶ 14 and Exhibit H).

(*Id.* ¶ 11 (emphasis added).) Mr. Jackling's responsive statement of facts references a "J38" document (Pl.'s reply to Def.'s Counterstatement of Facts ¶ 1, Jul. 31, 2023, ECF No. 75 ("Pl.'s Counterstatement"))[4], which is not discussed at all in Brighthouse's statement. Mr. Jackling's statement does not explain what the document is or what relevance it has to this lawsuit.

Brighthouse rejected Mr. Jackling's claims numbered A498470 (Sept. 16, 2016) and A519660 (Feb. 24, 2017). For each of those two claims, Brighthouse determined that Mr. Jackling did not need the services he claimed were necessary.

Mr. Jackling then filed claim number A583490 (Jun. 14, 2018). For that claim, Brighthouse determined he was eligible for services under the Policy and asked him for information about his caregivers. (Def.'s Statement of Facts ¶ 40.) Mr. Jackling

---

[4] Mr. Jackling filed his purported counterstatement of facts 17 days *after* Brighthouse filed its Reply. In essence, Mr. Jackling's purported counterstatement of facts is, in reality, a sur-reply, which the Court did not authorize. The Court will not consider the portions of the purported counterstatement that are clearly sur-replies to Brighthouse's Reply.

3

SPA-4

submitted time sheets for Anacristina Ammitzboll and Kari Amoroso. (*Id.* ¶ 41.)
When asked by Brighthouse for certifications, "Plaintiff submitted unofficial,
homemade certifications for Anacristina Ammitzboll (listed as 'Ana Cristina
Ammitzboll' on the certificate) and Kari Amoroso as 'Personal Assistant, Aide I.'" (*Id.*
¶ 43.) Brighthouse denied the claim because Mr. Jackling failed to provide
certifications for the two aides. (*Id.* ¶ 45.)

Mr. Jackling contends that "New York State does not require Aides I to be
certified. Secondly, in New York State regulations the exemptions from the law are
extended to military personnel with the training." (Pl.'s Counterstatement ¶ 12.) Mr.
Jackling sent Brighthouse "portions of articles, asserting among other things, that
home health aides do not need to be certified for purposes of the [P]olicy." (Def.'s
Statement of Facts ¶ 47.) Mr. Jackling also submitted a letter from his physician
stating, "that Plaintiff was qualified to 'certify' aides for non-contact services, and a
letter from Plaintiff asserting the Plaintiff is qualified to certify aides." (*Id.* ¶ 52.)
Brighthouse rejected Mr. Jackling's claims and notified him that the Policy required
certification by the New York State, or another state's, Department of Health. (*Id.*
¶ 53.)

Brighthouse searched the New York State Home Care Registry at the following
URL:  https://apps.health.ny.gov/professionals/home_care/registry/home.action.  (*Id.*
¶ 57.) The search took place on or about July 19, 2022, and "did not turn up any
records regarding 'Kari Amoroso,' 'Anacristina Ammitzboll,' 'Ana Cristina
Ammitzboll' or 'Cris Ammitzboll.'" (*Id.* ¶ 58.)

SPA-5

On or about July 15, 2019, Mr. Jackling filed another claim, number A635590. (*Id.* ¶ 59.) Brighthouse advised Mr. Jackling he was eligible for benefits and Mr. Jackling accepted Brighthouse's proposed caregiver, Comfort Keepers. (*Id.* ¶¶ 60–61.) "Brighthouse has been paying Claim A635590 since October 2019, for the time period beginning September 7, 2019." (Def.'s Statement of Facts ¶ 62.)

In response to an interrogatory, Mr. Jackling again asserted that New York did not require licensing of home health Aide I personnel. (*Id.* ¶ 68.) Mr. Jackling made the same assertion in the prior lawsuit, *Estate of Jackling*. (*Id.* ¶ 76.) The present action contains the same causes of action as were asserted by Mr. Jackling in his capacity as Executor in *Estate of Jackling*. (*Id.* ¶¶ 80–81.) In response to an interrogatory in *Estate of Jackling*, asking about the aides' certifications, Mr. Jackling stated:

> ANSWER: The care providers for which Plaintiff seeks payment reimbursement for were not licensed. The benefits were wrongfully denied because the policy in question in this lawsuit specifically provides for payment and reimbursement of Aide I homemakers/caretakers/personal assistants, which do not require licensing in New York State. No where in the policy does it expressly require that an Aide I homemaker/caretaker/personal assistant must be licensed.

(Pl.'s Resp. First Set of Interrog. by Brighthouse Life Ins. Co. to Pl. ¶ 4, Ex. H *attached to* Kingsley Decl., Sept. 1, 2022, ECF No. 54-2.)

## LEGAL STANDARD

### Summary Judgment Standard

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, … demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 323 (1986), and "the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a) (2015). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d 98, 107 (2d Cir. 1996) (citation omitted).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Id.* at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### Collateral Estoppel Standard

The Second Circuit and New York courts recognize the doctrine of collateral estoppel. *Irving Nat. Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926) (noting about

collateral estoppel, "All this is very old law."); *see also Gramatan Home Invs. Corp. v. Lopez*, 46 N.Y.2d 481, 485 (1979) ("[Collateral estoppel], so necessary to conserve judicial resources by discouraging redundant litigation, is grounded on the premise that once a person has been afforded a full and fair opportunity to litigate a particular issue, that person may not be permitted to do so again.") Under collateral estoppel, a final judgment on the merits in a prior action prevents relitigating in a subsequent action of issues actually litigated in the prior lawsuit. *Restatement (Second) of Judgments* Section 27 (1992).

For collateral estoppel to apply, the following elements must be present:

1. the previous lawsuit must have resulted in a final judgment on the merits;

2. the issue in question must be identical to an issue actually litigated;

3. the issue must be necessary to the judgment in the previous lawsuit; and

4. the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the previous lawsuit.

*Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 648 (E.D.N.Y. 2017); *see also Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003).

**Privity**

The doctrine of collateral estoppel applies to the parties in that prior action as well as those in "in privity" with the party in the prior action. *Cayuga Indian Nation v. Seneca County*, 260 F. Supp. 3d 290, 303–04 (W.D.N.Y. 2017) (quoting *Buechel v. Bain*, 97 N.Y.2d 295, 304–05 (2001) ("[P]rivity is an amorphous concept not easy of application and includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are

represented by a party to the action, and those who are co-parties to a prior action.");
*see also Morabito v. New York*, No. 6:17-CV-6853-MAT, 2018 U.S. Dist. LEXIS 101502
(W.D.N.Y. June 18, 2018) (privity found between spouses where they had the same
property interests).

### DISCUSSION

*Brighthouse did not plead collateral estoppel as an affirmative defense*

Federal Rule of Civil Procedure 8(c) requires a defendant to raise any
avoidance or affirmative defense in its Answer. In its memorandum in support of the
motion for summary judgment (Def.'s Mem. at 3 n.2, Sept. 1, 2022, ECF No. 54-1),
Brighthouse impliedly acknowledges that it did not raise the defense of collateral
estoppel in its answer (Answer, Nov. 25, 2020, ECF No. 3), but did "at the first
pragmatically possible time." *Am. Fed. Grp. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir.
1998) ("waiver may not be proper where the defense is raised at the first
pragmatically possible time and applying it at that time would not unfairly prejudice
the opposing party.").

Brighthouse could not have raised the defense of collateral estoppel until the
Court entered its decision in the estate case on July 10, 2022. *Estate of Jackling v.
Brighthouse Life Ins. Co.*, No. 20-CV-6899-MJP, 2022 U.S. Dist. LEXIS 121290
(W.D.N.Y. July 10, 2022). On July 21, 2022, Brighthouse requested additional time
to file dispositive motions due, in part, to not having received Mr. Jackling's
deposition transcript, and trial schedules. (Def. Letter Motion at 1, ECF No. 51.) The
Court granted the motion and set September 1 as the filing date for dispositive
motions. (Order, Jul. 22, 2022, ECF No. 52.) Because the defense did not arise until

8

SPA-9

July 10, 2022, and the Court, on consent of Mr. Jackling, granted Brighthouse's request to file a dispositive motion on September 1, 2022, the Court determines that Brighthouse did not forfeit[5] its defense of collateral estoppel by not including it in its answer filed more than one- and one-half years before a basis for that defense arose.

### Prior decision & collateral estoppel

Mr. Jackling commenced suit against Brighthouse regarding the claims of his deceased wife, Martha A. Jackling, in the *Estate of Jackling* action filed in this Court under Civil Action No. 20-CV-6899. As executor of his wife's estate, Mr. Jackling was in control of the litigation in that case. In that suit, Plaintiff asserted the same causes of action as in the present matter: (1) Breach of Contract; (2) Bad Faith in Breach of Contract; (3) Fraud; and (4) Deceptive Acts and Practices: Article 22a, Section 349 of The General Business Law of The State of New York. Mrs. Jackling's policy, the subject of the prior litigation, is identical to her husband's Policy, the one at issue in this case. (Grasso Decl. ¶ 5, Sept. 1, 2022, ECF No. 54-13) ("Aside from the information on the Policies' declarations pages and applications (regarding the insured's identifying information), Exhibit A and Exhibit B are identical policies.").

In his memorandum in opposition to summary judgment, Mr. Jackling argues that regarding two of the claims he made under the Policy with Brighthouse (numbers A519660 and A584490), issues of fact preclude summary judgment. (Pl.'s

---

[5] "'[W]aiver is accomplished by intent, but forfeiture comes about through neglect.'" *United States v. Spruill*, 808 F.3d 585, 597 (2d Cir. 2015) (quoting *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008)). Thus, the Court refers to Brighthouse's failure to raise the collateral estoppel defense in its answer as a forfeiture rather than a waiver. Nevertheless, Brighthouse has neither intentionally waived its defense, nor has it negligently forfeited it.

Mem. of Law at 6, Jun. 12, 2023, ECF No. 67.) In addition, he argues that collateral estoppel does not apply for this reason:

> [I]n order to succeed with the defense of Collateral Estoppel, defense must show that the issue which it seeks to have established was essential to the earlier judgement. In that regard, if the earlier judgement was based on two or more independent grounds, then the earlier determination of the issue sought to ·be estopped was not "essential" and there is no collateral estoppel. *Jaffe v Fitzgerald*, CV-06-0317 (E.D.N.Y. 2009); *Halpern v Schwartz*, 426 F.2d 102 (2d Cir., 1970). Here, the judgement below was made on several independent grounds, including licensing or certification; plan of care; statute of limitations; and proof of claim. Therefore none of these issues was "essential" to the judgement because the Judgement would have been the same even if that issue had been decided differently. For example, if the Court had found that the policy covered non-certified aides who do not work through an agency, the case would still have been dismissed because of the adverse findings on the other issues. Therefore the determination non-certified aides [sic] does not collaterally estop the determination in the case at bar.

(Pl.'s Mem. of Law at 8.)

Regarding the *Halpern* case, the Second Circuit in *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38 (2d Cir. 1986), held that, "[t]he  general rule in this Circuit is that 'if a court decides a case on two grounds, each is a good estoppel.'" *Gelb*, 798 F.2d at 45 (quoting *Irving National Bank v. Law*, 10 F.2d 721, 724 (2d Cir. 1926) (L. Hand, J.)). The Court of Appeals also stated in *Halpern*: "However, if an appeal is taken and the appellate court affirms on one ground and disregards the other, there is no collateral estoppel as to the unreviewed ground." *Id.* (citation omitted).

The issues litigated in the prior case match the issues to be litigated in this case:

SPA-11

| *Estate of Jackling* | *Current Case* |
|---|---|
| Breach of Contract Fails because the Policy Does Not Provide Benefits for the Services of Privately Hired, Non-Certified Caregivers. | Breach of Contract Fails because the Policy Does Not Provide Benefits for the Services of Privately Hired, Non-Certified Caregivers. |
| Cause of action for breach of the implied duty of good faith is not cognizable | Cause of action for breach of the implied duty of good faith is not cognizable |
| Jackling's Fraud Claim is Time-Barred | Jackling's Fraud Claim is Time-Barred |
| Jackling's NY GBL 349 Claim is Time-Barred | Jackling's NY GBL 349 Claim is Time-Barred |
| Jackling Fails to State a Claim for Fraud | Jackling Fails to State a Claim for Fraud |
| Jackling Fails to State a NY GBL 349 Cause of Action | Jackling Fails to State a NY GBL 349 Cause of Action |
| Jackling's Claims for Punitive and Consequential Damages are not Permitted | Jackling's Claims for Punitive and Consequential Damages are not Permitted |

This Court granted summary judgment to Brighthouse regarding all the issues in the *Estate of Jackling* action. *See Jackling*, No. 20-CV-6899-MJP, 2022 U.S. Dist. LEXIS 121290. Based on its Decision and Order, the Clerk entered final judgment in the *Estate of Jackling* action. (Judgment in favor of Brighthouse Life Ins. Co., Jul. 11, 2022, ECF No. 74, *Jackling v. Brighthouse*, No. 20-CV-6899-MJP.)[6]

Plaintiff had a full and fair opportunity to litigate the identical issues in the *Estate of Jackling* action and the issues litigated in that action are identical to the issues to be litigated in the present action. Finally, the issues litigated in the prior action were necessary to the judgment in the prior lawsuit.

---

[6] Mr. Jackling filed a notice of appeal on August 5, 2022, and he filed a brief on June 16, 2023, in the Court of Appeals. Brighthouse's brief is due September 1, 2023. *Jackling v. Brighthouse Life Ins. Co.*, No. 22-1703 (2d Cir. Jun. 26, 2023).

Thus, Brighthouse has shown that (1) the previous lawsuit resulted in a final judgment on the merits; (2) the issues in question here are identical to the issues actually litigated in the *Estate of Jackling* case; (3) the issues were necessary to the judgment in the previous lawsuit; and (4) the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate the issues in the previous lawsuit. The Court concludes that collateral estoppel applies as to those issues previously litigated by Mr. Jackling as executor in the *Estate of Jackling* case.

Mr. Jackling also argues that he is not in privity because he was acting as executor in the prior lawsuit and now acts in his personal capacity. (Pl.'s Mem. of Law at 8.) He relies on the Fourth Department holding in *Tupper v. Tupper*, 34 A.D.3d 1280 (N.Y. App. Div. 4th Dep't 2006). In its decision, the Fourth Department held:

> "Generally, to establish privity the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding." In this case, the interests of Patricia, individually, conflict with the interests of the Trust and, therefore, conflict with the interests of Patricia as cotrustee.

*Tuper*, 34 A.D.3d at 1281–82 (quoting *Green v Santa Fe Indus.*, 70 N.Y.2d 244, 253 (1987)). *Tupper* involved a husband and wife suing over property following a divorce action. The factual circumstances in *Tupper* are the opposite of those in Mr. Jackling's case. The Court does not find *Tupper* persuasive.

Mr. Jackling also opposes the application of collateral estoppel because he did not have a full and fair opportunity to litigate the questions in the *Estate of Jackling* action due to what he characterized as the incompetence and inexperience of counsel. (Pl.'s Mem. of Law at 9.) For this argument, he relies on *Gilberg v. Barbieri*, 53 N.Y.2d 285 (1981). In his decision for the New York Court of Appeals, Judge Wachtler wrote

that in 1967, the Court of Appeals adopted two necessary requirements for collateral estoppel: "'There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling.'" *Gilberg*, 53 N.Y.2d at 291 (quoting *Schwartz v. Public Administrator of County of Bronx*, 24 N.Y.2d 65, 71 (1969)). Judge Wachtler further stated that the question as to whether a party had a full and fair opportunity to litigate a prior determination,

> involves a practical inquiry into "the realities of litigation. A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation."

*Id.* at 292 (quoting *Schwartz*, 24 N.Y.2d at 72). Mr. Jackling contends that counsel in the *Estate of Jackling* case was "arguably incompetent, did not conduct depositions and was twice sanctioned by the court." (Pl.'s Mem. of Law at 9.) He also pointed out that counsel "did not assert legal doctrines, like continuing violation, which should have been raised." (*Id.*)

In an email sent to the Court, Mr. Jackling wrote about his two lawyers: Mr. Stern, followed by Mr. Thiagarajan. He stated,

> I have discharged my lawyer. But about the lawyers, there is one thing I would like to say. First, I always paid them what they wanted when they came to work, or I was at their office. This is true for both Mr. Thiagarajan and Mr. Stern. But these lawyers have funny thoughts. Like, how much are you going to pay me if I lose. And he thought about what I paid him and would like more.

13

SPA-14

(Email from Mr. Jackling to the Court at 1–2 (Oct. 13, 2022 at 9:48 AM) *attached to* Thiagarajan Mot. to Withdraw as Counsel to Plaintiff, Nov. 9, 2022, ECF No. 57-1.)

Regarding the sanctions, the Court did sanction Mr. Jackling for his prior counsel's failure to remove unnecessary parties from this action, thus requiring Brighthouse to file a motion to dismiss. The Court awarded $2,226 in costs to Brighthouse under 28 U.S.C. § 1927. (Decision & Order, Apr. 28, 2022, ECF No. 42.) Mr. Jackling's prior counsel's failure to remove unnecessary defendants does not indicate incompetence on the issues present in Brighthouse's motion for summary judgment. Further, on September 29, 2021, the Court ordered Mr. Jackling to disclose the name of the retired judge who assisted him in preparing the documents purportedly evidencing medical expenses, which Mr. Jackling had refused to disclose. (Order, ECF No. 21.) Once again, the order compelling disclosure, and awarding reasonable costs to Brighthouse, does not prove that counsel was incompetent regarding the issues raised in the summary judgment application.

Finally, as to his contention that counsel failed to allege a "continuing violation," the Court is unaware of any basis for such a claim. Mr. Jackling's conclusory statement on this point does not provide any basis to determine such a claim was available in this case, or that it would have been successful if raised in the *Estate of Jackling* case.

The Court's prior decision in *Estate of Jackling* collaterally estops Mr. Jackling from raising the same claims in this case. Thus, collateral estoppel requires that Brighthouse be granted summary judgment here.

14

SPA-15

***Alternative arguments***

In its reply, Brighthouse argues that, assuming *arguendo*, collateral estoppel does not apply, Brighthouse is nevertheless entitled to summary judgment. First, Brighthouse contends that Mr. Jackling acknowledged in his opposing memorandum of law that Brighthouse is paying on claim number A635590, thus removing that claim from the lawsuit. Further, Mr. Jackling did not oppose dismissal of his claims of Breach of Implied Duty of Good Faith, Fraud (both as time-barred and on the merits), New York General Business Law section 349 (both as time-barred and on the merits), and for Punitive and Consequential Damages.

In *Estate of Jackling*, the Court ruled on Mr. Jackling's claim that the policy did not require certified aides to be entitled to reimbursement for their expenses. (Decision and Order at 67–70, *Estate of Jackling*, ECF No. 73.) Contrary to his position, the Policy language requires certified aides, and as pointed out in the decision in *Estate of Jackling*, New York does offer certification for aides.

In his memorandum opposing summary judgment, Mr. Jackling contends that a New York Department of Health pamphlet, which he has included as an exhibit, states that "Personal care aides who provide only homemaker or housekeeping services (Personal Care Aide I) are not required to have formal training." (Pl.'s Mem. of Law at 12.) He argues that "since Brighthouse can't show that certification is available for Level I aides like those involved here, it has promoted them to Level II aides. It has dressed them in uniform, figuratively speaking, and made them personal care aides who <u>must</u> have certifications." (*Id*.) This argument is not persuasive. Mr. Jackling is receiving services for which Brighthouse is paying under claim number

15

A635590, so it is possible to hire individuals who qualify under the policy for reimbursement.[7] The relevant portion of the Policy reads:

> Services of a licensed or certified home health aide who does not report through a licensed or certified home health agency will be covered as long as the following conditions are met: 1) You must utilize the Care Coordination Benefit as described in Your policy; and 2) The Licensed Health Care Practitioner develops a written Plan of care certifying the need for care, and arranges for and approves the necessary services of a certified home health aide.

(Policy, Home Health Care ¶ 7, *attached as* Ex. A to Grasso Decl., Sept. 1, 2022, ECF No. 54-13.) Mr. Jackling has not provided proof that he complied with paragraph seven of the Policy requiring a health care practitioner to develop a written plan showing the need for a certified home health aide, or, except for claim number A635590, that the aides Mr. Jackling hired were certified. Accordingly, Brighthouse is entitled to summary judgment on this issue, as was the case in *Estate of Jackling*.

Regarding claim number A519660, Brighthouse argues that Mr. Jackling did not show he was a chronically ill individual as required by the Policy. That claim was under adjudication from February 24, 2017, until April 22, 2017. On May 11, 2017, after the claim was closed, Mr. Jackling offered a note from his physician in support of his claim. In a medical assessment by Jules Zysman, M.D., Mr. Jackling's primary care physician, dated March 8, 2017, the doctor certified that Mr. Jackling had no difficulties with activities of daily living ("ADL"). (Attending Physician Statement 1–2, *attached as* Ex. N to Grasso Decl., ECF No. 54-27.) Regardless of whether

---

[7] In his declaration, Mr. Jackling outlined the problems he had convincing Brighthouse to pay for Comfort Care aides. (Jackling Decl. ¶¶ 22–24, Jun. 12, 2023, ECF No. 67-1.)

16

Brighthouse properly considered the post-claim-period note from the doctor, Mr. Jackling used uncertified aides and would not have qualified for reimbursement even if aides were found by Brighthouse to be medically necessary.

Mr. Jackling cites to a letter from MetLife dated July 7, 2014, in support of his argument that the Policy required an impossible condition.[8] That letter, attached as Exhibit 5 to his memorandum of law, pertains to the *Estate of Jackling* case, but since the policies are identical, the Court will review it here. In the first page, the writer, Christine Daly, Senior Technical Specialist, Claims Services for MetLife Insurance Company, Brighthouse's predecessor, wrote, "The Alternate Plan of Care must be developed by a Licensed Health Care Practitioner and must be agreed to in writing by the Insured (or their representative). The Practitioner and Us." (Letter to The Estate of Martha Jackling from MetLife (Jul. 7, 2014) at 1, *attached as* Ex. 5 to Pl.'s Mem. of Law, ECF No. 67.) Thus, as early as 2014, Mr. Jackling was made aware

---

[8] Mr. Jackling filed exhibits separately, but all those exhibits are labeled with letters. In an attempt to find the exhibit he referred to as "Exhibit 6 MetLife 2/4/14 letter p.2," (Pl.'s Mem. of Law at 12), the Court opened the attached exhibits and went to the sixth one (labeled as "Exhibit F" in ECF No. 67-2), which is labeled as "Plaintiff's Rule 26(a)(1) Initial Disclosures" in the *Estate of Jackling* case. The exhibits are in portable document format, but are not machine searchable, nor is the document tabbed with bookmarks for the exhibits. None of the exhibits marked A through K contain the letter referenced in Mr. Jackling's memorandum. Both parties used letters, not numbers, to label their exhibits. It was not until the Court reached the end of Plaintiff's memorandum that it found exhibits attached *to the memorandum* and labeled with numbers. Some of the scanned documents were sideways, so the Court has had to extensively re-rotate pages in Plaintiff's memorandum of law to make it readable.

Further, although "[t]he Court is under no obligation to sift through the parties' voluminous materials to find support for their arguments that they have failed to point out," *Perpall v. Pavetek Corp.*, No. 12-CV-0336 (PKC), 2017 U.S. Dist. LEXIS 44567, at *3 (E.D.N.Y. Mar. 27, 2017), it has done so in this one instance because Mr. Jackling appears to be proceeding *pro se*, although he has maintained that he is receiving assistance from someone at the Veterans' Administration, possibly a lawyer.

of the Policy condition for home health aides. However, Mr. Jackling highlighted a

portion of the following language:

> The state of New York does not require agencies to be licensed if that
> agency provides non-skilled care, such as that of a home health aide.
> Therefore, we do not enforce that a home health care agency providing
> custodial care in New York be licensed (as noted in # 7 above). A New
> York unlicensed agency that provides non-skilled or custodial care is
> generally covered under the terms of the policy. Our research shows that
> nurse aide training programs are approved by the New York State
> Education Department and are available throughout the State of New
> York. As there are nurse aide training programs available in New York,
> we require that the services of a private caregiver be certified/trained to
> provide home health care as outlined in the policy.

(*Id*. at 3.)[9]

Mr. Jackling also cites to Exhibit 6, a letter from Cynthia Pelletier, Senior

Provider Specialist for MetLife dated February 4, 2014 (ECF No. 67 at Ex. 6). In that

letter, MetLife informed Ms. Jackling that "ConForcare Senior Services Rochester-

East does not meet the policy definition of home health care agency as explained

below." (*Id*. at 1.) Ms. Pelletier went on to state:

> Information provided by ComForcare Senior Services Rochester–East,
> indicates that the agency is not licensed or certified by the State of New
> York, Department of Health to provide Home Health Care. As such.
> ComForcare Senior Services Rochester–East is not "… a licensed home
> health care agency …" as required by the policy.

(Letter from Cynthia Pelletier to Mrs. Jackling (Feb. 4, 2014) at 2, *attached as* Ex. 6

to Pl.'s Mem. of Law, ECF No. 67.)

---

[9] The letter does not appear to have page numbers, but it does look as if the paragraphs
of the letter have been labeled and this paragraph is labeled "6."

New York Public Health Law Article 36 is entitled Home Care Services.

Section 3602 defines the following:

1. "Home care services" means one or more of the following services provided to persons at home: (a) those services provided by a home care services agency; (b) home health aide services; (c) personal care services; (d) homemaker services; (e) housekeeper or chore services.

2. "Home care services agency" means an organization primarily engaged in arranging and/or providing directly or through contract arrangement one or more of the following: Nursing services, home health aide services, and other therapeutic and related services which may include, but shall not be limited to, physical, speech and occupational therapy, nutritional services, medical social services, personal care services, homemaker services, and housekeeper or chore services, which may be of a preventive, therapeutic, rehabilitative, health guidance, and/or supportive nature to persons at home.

3. "Certified home health agency" means a home care services agency which possesses a valid certificate of approval issued pursuant to the provisions of this article, or a residential health care facility or hospital possessing a valid operating certificate issued under article twenty-eight of this chapter which is authorized under section thirty-six hundred ten of this article to provide a long term home health care program. Such an agency, facility, or hospital must be qualified to participate as a home health agency under the provisions of titles XVIII and XIX of the federal Social Security Act and shall provide, directly or through contract arrangement, a minimum of the following services which are of a preventive, therapeutic, rehabilitative, health guidance and/or supportive nature to persons at home: nursing services; home health aide services; medical supplies, equipment and appliances suitable for use in the home; and at least one additional service which may include, but not limited to, the provisions of physical therapy, occupational therapy, speech pathology, nutritional services and medical social services.

4. "Home health aide services" means simple health care tasks, personal hygiene services, housekeeping tasks essential to the patient's health and other related supportive services. Such services shall be prescribed by a physician in accordance with a plan of treatment for the patient and shall be under the supervision of a registered professional nurse from a certified home health agency or, when appropriate, from a provider of a long term home health care program and of the appropriate professional therapist from such agency or provider when the aide

19

carries out simple procedures as an extension of physical, speech or occupational therapy. Such services may also be prescribed or ordered by a nurse practitioner to the extent authorized by law and consistent with subdivision three of section six thousand nine hundred two of the education law and not prohibited by federal law or regulation.

5. "Personal care services" means services to assist with personal hygiene, dressing, feeding and household tasks essential to the patient's health. Such services shall be prescribed by a physician in accordance with a plan of home care supervised by a registered professional nurse. Such services may also be prescribed or ordered by a nurse practitioner to the extent authorized by law and consistent with subdivision three of section six thousand nine hundred two of the education law and not prohibited by federal law or regulations.

6. "Homemaker services" means assistance and instruction in managing and maintaining a household, dressing, feeding, and incidental household tasks for persons at home because of illness, incapacity, or the absence of a caretaker relative. Such services shall be provided by persons who meet the standards established by the department of social services.

7. "Housekeeper services" or "chore services" means the provision of light work or household tasks which do not require the services of a trained homemaker. Such services may be provided for persons at home because of illness, incapacity, or the absence of a caretaker relative by persons who meet the standards established by the department of social services.

N.Y. Pub. Health Law § 3602(1)–(7) (Consol., Lexis Advance through 2023 released Chapters 1-349). The categories of home health aide services and personal care services require a medical person's order and supervision by a medical professional. None contemplate that a patient can hire private aides and qualify under the statute. Nothing in the definitions in the statute supports Mr. Jackling's claim that the Policy required hiring health care professionals to perform personal care services. New York added New York Public Health Law section 3613 in 2008. A portion of that statute states:

20

SPA-21

> 2. The department shall develop and maintain a home care services worker registry of persons who have successfully completed a state-approved education or training program. Information in the registry shall be readily accessible on the department's website by the public, home care services workers, and home care services entities, subject to subdivision seven of this section. A home care services entity shall obtain information relating to a home care services worker, pursuant to paragraph (c) of subdivision seven of this section, prior to the worker beginning to provide home care services for that entity, except that a home care services worker employed by any entity prior to the effective date of this section may provide home care services as provided in subdivision eight of this section. No employer of a home care services worker other than a home care services entity shall be required to obtain information from the registry.

N.Y. Pub. Health Law § 3613(2) (Consol., Lexis Advance through 2023 released Chapters 1-349). Thus, the Court is not persuaded by Mr. Jackling's argument that no certification process is available in New York and that the Policy requirement for certification should be void.

### Chronic illness

Brighthouse's basis for denying claim number A519660 was that Mr. Jackling did not submit proof that he was a "chronically ill individual" as required by the police. (Pl.'s Mem. of Law at 13.) He submits that he has raised an issue of fact about whether he met the Policy definition as of May 11, 2017, and thereafter. He argues that "according to Brighthouse counsel, the attending physician report may fairly be considered when it favors the insurance company but must be disregarded when it favors the insured." (*Id.* 13.) This refers to the claim that was opened on February 24, 2017, and closed on April 22, 2017, when Mr. Jackling failed to provide the proof required. Mr. Jackling, on May 11, 2017, then sent a note from his doctor claiming he was chronically ill. Yet in a report dated March 8, 2017, the same doctor reported Mr.

Jackling needed no assistance with the activities of daily living. (Attending Physician's Statement at 1–2, *attached as* Ex. N to Grasso Decl., ECF No. 54-27.)

Mr. Jackling relies on the holding in *Estate of Taylor v. John Alden Life Ins. Co.*, 574 F. Supp. 3d 347 (D.S.C. 2021).[10] In *Taylor*, the defendant insurance company commenced a recertification of Mrs. Taylor's eligibility for benefits under a long-term care policy. At issue was whether Mrs. Taylor was a chronically ill individual under her policy. Mrs. Taylor's treating physician had certified in a statement dated September 17, 2018, that she was a chronically ill individual needing assistance with the activities of daily living. However, the assisted living residence in which she had resided since 2014, "The Palms," filed "Senior Living Resident Evaluations" dated June 25, 2018, and July 3, 2018, reflecting that "Ms. Taylor did not require assistance with ADLs." *Estate of Taylor*, 574 F. Supp. 3d at 352. The district court found an issue of fact regarding the conflicting reports.

Brighthouse points out that both reports in *Taylor* were dated within the period of the 2018 recertification process, whereas here, the doctor's May statement was created outside the claim period.[11] Thus, the doctor's May assessment does not reflect eligibility for the period at issue in claim number A519660.

---

[10] Both Mr. Jackling and Brighthouse cite the case as 374 F. Supp. 3d 347, but that citation is for *Lepore v. Hartford Fire Ins. Co.*, decided by the Southern District court in New York, and has nothing to do with a long-term care policy. The Court's search on the name of the case revealed the citation to be 574 F. Supp. 3d 347 (D.S.C. 2021).

[11] "On July 12, 2017, we received a May 11, 2017, note from Dr. Zysman stating that 'Mr. Jackling requires supervision when eating and assistance with ADLs and dealing with urinary incontinence.' This note from Dr. Zysman dated May 11, 2017, is not a certification that you were a Chronically Ill Individual as defined by the Policy during the review period of January 6, 2017 through April 22, 2017, as it was completed outside of the claimed period." (*continued*)

SPA-23

**CONCLUSION**

The Court finds that Mr. Jackling is collaterally estopped in this case from asserting all the claims raised, which were previously decided by this Court in *Estate of Jackling*, No. 20-CV-6899-MJP (W.D.N.Y. Jul. 10. 2022). Further, the Court finds that Mr. Jackling was in privity with himself as executor in the *Estate of Jackling* case. If the Court of Appeals reverses any part of this Court's decision in the *Estate of Jackling* case, which would call in to question the application of collateral estoppel, the Court has undertaken an assessment of Mr. Jackling's arguments above and finds that he has not raised a material issue of fact precluding summary judgment. For those reasons, the Court grants Brighthouse Life Insurance Company's motion for summary judgment (ECF No. 54).

**SO ORDERED**.

Dated:  September 6, 2023
        Rochester, New York

_____
Mark W. Pedersen
United States Magistrate Judge

_____

(Letter from Janell Harkin, Adjudication Consultant, Claims Services, Brighthouse Financial (Jun. 6, 2018) at 9, *attached to* Grasso Decl. as Ex. W, ECF No. 54-36.)

SPA-24

AO 450 (Rev. 11/11)  Judgment in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western ____ District of ____ New York

| | |
|---|---|
| William T. Jackling | ) |
| *Plaintiff* | ) |
| v. | )  Civil Action No. ____ 6:20-CV-6995-MJP |
| Brighthouse Life Insurance Company, et al., | ) |
| *Defendant* | ) |

## JUDGMENT IN A CIVIL ACTION

The court has ordered that *(check one)*:

☐  the plaintiff *(name)* _____ recover from the
defendant *(name)* _____ the amount of
_____ dollars ($ _____ ), which includes prejudgment
interest at the rate of _____ %, plus post judgment interest at the rate of _____ % per annum, along with costs.

☐  the plaintiff recover nothing, the action be dismissed on the merits, and the defendant *(name)* _____
_____ recover costs from the plaintiff *(name)* _____
_____ .

☒  other:   judgment granted in favor of Defendant against Plaintiff and the case is closed. _____
_____ .

This action was *(check one)*:

☐  tried by a jury with Judge _____ presiding, and the jury has
rendered a verdict.

☐  tried by Judge _____ without a jury and the above decision
was reached.

☒  decided by Judge ____ Mark W. Pedersen _____ on a motion for ____ summary judgment. ____
_____ .

Date: _____ 9/6/2023 _____           *CLERK OF COURT*

                                            s/Mary C. Loewenguth
                                            _____
                                            *Signature of Clerk or Deputy Clerk*